UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| T.F., an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>HARIKRUPA LANCASTER HOSPITALITY LLC (n/k/a  SSN WEST ATLANTIC CITY, LLC), and GURUJI, INC.<br>        Defendants. | CIVIL ACTION NO:<br><br><br>**COMPLAINT** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff T.F., by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

## INTRODUCTION

1.      This action for damages is brought by T.F. ("Plaintiff"), a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595, as well as per any state laws as may be identified herein.

2.      HARIKRUPA LANCASTER HOSPITALITY LLC n/k/a  SSN WEST ATLANTIC CITY, LLC, was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel located at 2165 E Lincoln Hwy, Lancaster, PA 17602 from on or about January 10, 2014 to on or about August 15, 2016, and as such responsible, for the subject hotel doing business as the Econo Lodge Amish Country during time period Plaintiff was sex trafficked on said premises within the aforesaid time period.

3.      Upon information and belief, the principal place of business of the aforesaid Defendant is 5159 West Woodmill Drive, Suite 15, Wilmington, DE 19808.

4.      GURUJI INC., was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel located at 2165 E Lincoln Hwy, Lancaster, PA 17602 prior to on or about January 10, 2014, and as such responsible, for the subject hotel doing business as the Econo Lodge Amish Country, upon information and belief, during the time period Plaintiff was sex trafficked on said premises during years 2012 through and inclusive on or about January 10, 2014.

5.      Upon information and belief, the principal place of business of the aforesaid Defendant is 2165 E Lincoln Hwy, Lancaster, PA 17602.

6.      During the relevant aforesaid time periods set forth above, Defendants were respectively owners of the subject premises located at 2165 E Lincoln Hwy, Lancaster, PA 17602.

7.      Sex trafficking is defined under 22 U.S.C. § 7102 (11) as, "The recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

8.      Plaintiff meets the definition of a sex trafficking victim as she was induced by force, fraud, and coercion by her trafficker(s) to engage in commercial sex at the subject hotel. She was psychologically and/or physically prohibited from escape from her trafficker(s).

9.      Plaintiff is a victim as set forth in the TVPRA as she was induced to engage in commercial sex by her trafficker(s) by force, threats, and coercion at the subject hotel.

10.     The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act. Specifically, section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value

from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

11.     As it pertains to the subject hotel, Plaintiff was sex trafficked at the aforesaid hotel by her trafficker(s), as relevant to allegations brought herein, beginning in 2012 and through 2015.

12.     Sex trafficking had occurred at the subject hotel dating back to at least 2012 and, upon information and belief, prior thereto.

13.     As hotel operators, Defendants controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was trafficked.

14.     Sex trafficking is prevalent at hotels and motels throughout the United States and globally due to many factors, including but not limited to, ease of access for buyers, the ability to pay in cash (non-traceability), the ability to maintain some level of anonymity, privacy and discretion.

15.     At all relevant and material times, upon information and belief, Defendants had knowledge of the prevalence of sexual trafficking within the hotel industry, yet Defendants failed to prevent and/or take steps to prevent this trafficking from occurring at the subject hotel, so that Defendants could continue earning a profit.

16.     As part of their knowledge of sex trafficking, Defendants knew or should have known that sex trafficker(s), or 'pimps', use drugs, threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will on hotel premises.

17.     Plaintiff's sex trafficker(s) deliberately selected the Defendants' hotel as a  venue to

conduct their sex trafficking activities including as to the sex trafficking of the Plaintiff herein.

18.     Upon information and belief, Plaintiff's trafficker(s) had hotel employee(s) acting as lookouts for Plaintiff's trafficker(s) and informed the trafficker(s) of police activity.

19.     The passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendants on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be all the more vigilant and proactive in preventing this conduct.

20.     Defendants participated in a venture by operating a hotel that rented rooms to individuals that Defendants knew or should have known were involved in sex-trafficking on the subject premises, and in particular, the sex trafficking of the Plaintiff herein on the subject hotel's premises.

21.     The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

22.     Defendants, as the owner, operator, manager, controller, and/or franchisee, of the subject hotel, knew or should have known, based on a combination of well-documented indicators, that sex trafficking and other criminal activity was occurring, including as to the Plaintiff herein, and would continue to occur, at the subject hotel as a result of their misfeasance and nonfeasance.

23.     A continuous business relationship existed between the subject hotel, its employees and staff, and Plaintiff's trafficker(s) in that the hotel repeatedly rented rooms to individuals they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

24.     Plaintiff was induced by her traffickers, by force, fraud and/or coercion, to have sex with staff at the subject hotel, i.e., with a manager and a custodian - both of whom Plaintiff

perceived to be of descent from India or at least the appearance thereof.

25.     The subject hotel by its agents, servants, staff and employee actually knew of the subject sex trafficking of Plaintiff on the premises because Plaintiff was induced by her traffickers, by force, fraud and/or coercion, to have sex with staff at the subject hotel, i.e., with a manager and a custodian - both of whom Plaintiff perceived to be of descent from India or at least the appearance thereof.

26.     A hotel can deny accommodation and/or eject a guest for a number of reasons including, but not limited to; (1) guest visibly under the influence of drugs and/or alcohol; (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes; (4) guest uses hotel amenities and premises for unlawful acts; (5) guest brings in extra unregistered guests; (6) guests' behavior reasonably disturbs other guests; (7) guest violates other rules set by the hotel; and (8) for other indicated reasons.

27.      Upon information and belief, years before Plaintiff was trafficked, Defendants knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking.

28.     Training of front-line hotel employees to be alert to red flags of trafficking activity is imperative and a best practice of hotel operating companies. Sex traffickers utilizing hotels within which to operate their illegal enterprises was well known within the industry by 2011. By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

29.     At all material times, Defendants, individually and/or by their respective actual or apparent agents, operators, servants, and/or employees, aided, concealed, confined, benefitted and profited from sex trafficking and other criminal activity that was occurring at the subject hotel,

including as to Plaintiff.

30.     At all material times, Defendants, individually and/or by their actual or apparent agents, operators, servants, and/or employees, harbored sex trafficker(s) at the subject hotel and/or failed to rectify the foreseeable risks of sex trafficking and other criminal activity that were occurring and would continue to occur at the subject hotel.

31.     At all material times,  Defendants, individually and/or by their respective actual or apparent agents, operators, servants, and/or employees, failed to take steps to prevent dangerous conditions from existing at the subject hotel, failed to ensure the subject hotel was safe and secure from criminal conduct and failed to report suspicious conduct, such as sex trafficking, at the subject hotel.

32.     As a result of Defendants' respective failure to act and Defendants' respective negligent operations as outlined in the Complaint, Defendants allowed the subject hotel to be a premises for the carrying out of sex trafficking of this particular Plaintiff.

33.     While Defendants profited from the room occupancy at the subject hotel, which included rental fees, increased property value, food and beverage sales on site and/or ATM fees, Plaintiff was being exposed to continuous and repeated dangerous conditions at the subject hotel as a sex trafficked victim that resulted in her confinement, bodily injuries, being exploited sexually, emotional distress, mental harm and anguish, and conscious pain and suffering on the subject premises.

34.     Before and during this period of trafficking as alleged herein during 2012 and through and inclusive of 2015, Defendants were respectively on notice of the prevalence of sex trafficking at the subject hotel as well as at similarly situated hotels within the subject location and their general vicinity, and Defendants failed to take adequate steps that would have prevented its

occurrence.

35.    Before and during the relevant time periods, respectively, Defendants failed to implement sufficient educational and training programs on sex trafficking within their business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

36.    During the relevant time period of trafficking as alleged herein during 2012 and through and inclusive of 2015, Defendants respectively knew or should have known that Plaintiff was being trafficked at the subject hotel and Defendants failed to act upon the obvious and overt signs alerting them to the crimes taking place at this subject hotel.

37.    Plaintiff brings this action for damages against Defendants. Defendants, in violation of the TVPRA, knowingly benefited from a venture that they knew, or should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a) and (b), and who enabled, harbored, facilitated or financially benefited, or any combination of the foregoing, from sex trafficking on the subject hotel premises in which Plaintiff was trafficked for sex, sexually exploited, and victimized in violation of the TVPRA.

38.    Had the Defendants timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiff at the subject hotel would have been prevented or mitigated.

39.    Defendants knowingly benefitted financially by receiving things of value by means of operating a hotel and renting rooms to trafficker(s) (or members of their entourage) and said Defendants knew or should have known said traffickers were engaged in an act in violation of the subject TVPRA chapter pertaining to Plaintiff.

40.     Defendants knew or should have known of the ongoing criminal enterprises of sex that had been conspicuously operating in the subject hotel.

41.     As a direct and proximate result of Defendants' willful blindness, negligence, facilitation, misfeasance, nonfeasance and/or consistent refusals to prevent sex trafficking at the subject hotel, the Plaintiff was drugged, malnourished, beaten, sex trafficked, sexually exploited, physically abused, mentally abused, and victimized repeatedly at this subject hotel.

42.     Plaintiff is a victim as set forth in the TVPRA as, during relevant time period herein, she was induced to engage in commercial sex by her trafficker(s) by fraud, force and coercion at the subject hotel.

43.     Due to the failure of Defendants to timely and properly embrace and implement anti-trafficking policies and practices, Plaintiff was repeatedly abused, victimized, and trafficked for sex. Defendants ignored open and obvious indications of sex trafficking that enabled Plaintiff's trafficker(s) to use the subject hotel to traffic Plaintiff and likely other victims without repercussion.

**JURISDICTION AND VENUE**

44.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely the TVPRA 18 U.S.C. § 1595 and this Court has supplemental jurisdiction over Plaintiff's claims that do not arise under federal law because each claim is, "so related to claims in the action within [this Court's] original jurisdiction that they form part of the same controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

45.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial

district where this action was brought, and Defendants conduct business within this District pursuant to 28 U.S.C § 1391(b).

## PARTIES

46.     At all times relevant and material to the sex trafficking alleged herein, Plaintiff was residing in the Commonwealth of Pennsylvania.

47.     Plaintiff is currently a resident of the State of California.

48.     Plaintiff was born in January 1996.

49.     Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

50.     Plaintiff was trafficked at this subject hotel both as a minor and adult.

51.     Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address are not contained in this Complaint to protect the privacy and identity of Plaintiff who incurred injuries and damages when being exploited by sex traffickers on the premises of the subject hotel. Nationwide, similarly situated plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

52.     As it pertains to these Defendants, and in particular the allegations brought herein, Plaintiff was sex trafficked at the "subject hotel" located at 2165 E Lincoln Hwy, Lancaster, PA 17602 in 2012, 2013, 2014, 2015; part of this time Plaintiff, who was born in January 1996, was a minor.

53.     At all relevant and material times as alleged herein, Defendant HARIKRUPA LANCASTER HOSPITALITY LLC n/k/a  SSN WEST ATLANTIC CITY, LLC., was doing business as Econo Lodge Amish Country located at 2165 E Lincoln Hwy, Lancaster, PA 17602, and, upon

information and belief, was authorized to do, licensed to do, and was doing business in the Commonwealth of Pennsylvania offering the subject hotel as a place of public lodging.

54.     At all relevant and material times as alleged herein, Defendant GURUJI, INC., was doing business as Econo Lodge Amish Country located at 2165 E Lincoln Hwy, Lancaster, PA 17602, and, upon information and belief, was authorized to do, licensed to do, and was doing business in the Commonwealth of Pennsylvania offering the subject hotel as a place of public lodging.

55.     At all material times to this complaint as alleged herein Defendants were, by and through their agents, servants, staff and/or employees, the owner, operators, managers, supervisors, controllers and innkeepers of the hotel, doing business as, the Econo Lodge Amish Country located at 2165 E Lincoln Hwy, Lancaster, PA 17602.

## SEX TRAFFICKING UNDER FEDERAL LAW

56.     The requirements for liability under TVPRA, 18 U.S.C. § 1595 on a beneficiary theory can be stated as follows: (1) the person or entity must "knowingly benefit, financially or by receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

57.     Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age."

58.     Sex trafficking is prohibited by federal criminal law under the already existing crimes 18 U.S.C. § 1589 and §1590.

59.     Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a

long-recognized and familiar atrocity.

60.     Pursuant to 18 U.S.C. §1591(a) and (b), all who knowingly provide or obtain commercial sex that was provided or obtained through force, fraud, and coercion or from a person under the age of 18 years old are guilty of sex trafficking.  This includes, at a minimum, both the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work and the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

61.     Due to the failure of the hospitality industry to address the issue, hotels are the venue of choice for sex trafficking.

**DEFENDANTS DUTY OF CARE TO PATRONS**

62.     In the Commonwealth of Pennsylvania, hotels are "innkeepers" and owe patrons a special duty of care.

63.     The subject hotel is a public lodging establishment.

64.      Defendants operated, managed, supervised, controlled, leased and/or is otherwise responsible for the subject hotel for the purpose of making a profit for the relevant time period in question. The premises of the subject hotel includes a common space and private rooms as well as a parking lot that abuts to a sidewalk and/or land, and, at all material times, Defendants had possession, custody, or control of these common spaces, private rooms, parking lots and any sidewalk and/or land abutting thereto as it applies to their business of providing public lodging at the subject hotel.

65.     Aside from their special duty to patrons and guests at the subject hotel, such as Plaintiff at all material times, Defendants had one of the highest obligations to protect their guests from known or anticipated dangers, which includes sex trafficking and illegal enterprises.

66.     At all relevant times, Defendants were aware of and/or should have been aware of their

roles and responsibility in sex trafficking.

**A. DEFENDANTS' KNOWLEDGE OF THE PREVALENCE OF SEX TRAFFICKING AT THE SUBJECT HOTEL AND THEIR PARTICIPATION.**

67.     At all relevant and material times, Defendants, as owners, operators, managers, supervisors, controllers and/or entity otherwise responsible for the subject hotel, knew or should have known that their hotel offered a level of anonymity and a level of non-traceability, making them ideal venues for crime, drugs and sex trafficking in particular.

68.     At all relevant and material times, Defendants, as owners, operators, managers, supervisors, controllers and/or entity otherwise responsible for the subject hotel knew or should have known that hotels are the top-reported venue where sex trafficking acts occur and that traffickers were using the subject hotel as a hub for their sexual trafficking operations.

69.     At all material times, Defendants, as owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for the subject hotel knew or should have known that trafficker(s) were harboring victims, including Plaintiff, at the subject hotel, and were forcing them to engage in sex services, wherein buyers ("Johns") would come to the hotel to purchase sex.

70.     At all relevant and material times, Defendants, individually and/or by and through their actual or apparent agents, servants, franchisees and/or employees, witnessed manifestations of sex trafficking and commercial exploitation taking place at the subject hotel through various indicators that trafficker(s) and their victims exhibit during their stay at the subject hotel.

71.     At all relevant and material times, Defendants, were on notice of repeated incidences of sex trafficking occurring on the subject hotel premises, yet they failed to take the necessary actions to prevent sex trafficking from taking place and in particular, the sex trafficking of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff.

72.     At all relevant and material times, Defendants knew or should have known that "pimps," "Johns" and/or sex trafficker(s) used the subject hotel to facilitate the trafficking of women for sex, including but not limited to Plaintiff.

73.     Defendants had the knowledge, ability, and the greatest reach to prevent, identify and thwart sexual exploitation, including that of Plaintiff, at this subject hotel.

74.     Multiple statutes and initiatives starting in 1997, have informed, mandated, called for, and suggested hotel operators, managers, supervisors, controllers and/or staff, including the Defendants, to implement effective safeguards to mitigate the risk that sex trafficking will occur at or involve their premises and personnel, including the subject hotel.

75.     Prior to the trafficking of Plaintiff, voluminous data, step-by-step solutions and well-researched manuals published by anti-trafficking groups were available to Defendants, individually and/or through their actual or apparent agents, servants, employees and/or staff in every position, to help them identify the signs of sex trafficking and stop it.

76.     At all relevant and material times, Defendants had a legally imposed duty to ensure that their subject hotel had taken all appropriate measures to prevent sex trafficking, and/or to timely implement reasonable policies, training, education and security measures to prevent sex trafficking.

77.     At all relevant and material times, the agents and/or employees of Defendants were uniquely situated to identify and report suspicious activity on their hotel properties because from check-in to check-out there were numerous indicators of the subject sex trafficking that was occurring of this Plaintiff at the subject hotel. See e.g. indicators listed in ¶ 132.

78.     Defendants' agents and/or employees, however, failed to take steps to report the

suspicious and obvious trafficking indicators at the subject hotel.

79.     Had Defendants properly trained their staff, agents and/or employees and/or implemented an anti-sex trafficking protocol at this subject hotel and/or provided other reasonable security measures, they would have prevented the trafficking of persons at this subject hotel and in particular this Plaintiff.

80.     Signs of sex trafficking at a hotel, and signs which were occurring at Defendants hotel, (and in particular during the time Plaintiff was being sex trafficked on the premises of the subject hotel), include, but are not limited to, those "red flags" identified in Count 1 below.

81.     Defendants, individually and by and through their actual or apparent agents, servants, employees and/or staff, were aware of and/or should have been aware of a number of warning signs at their hotel that indicated the presence of sex trafficking as it pertained to the Plaintiff herein and others, including but not limited to:

   a.  Persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

   b.  Persons lacking freedom of movement or being constantly monitored;

   c.  Persons in risqué clothing;

   d.  Victim(s) dressed in a sexually explicit manner;

   e.  Persons requesting room or housekeeping services (additional towels, new linens, etc.), but routinely denying hotel staff entry into the room;

   f.  Hotel guests with few or no personal possessions during check in and within the room;

   g.  Sex paraphernalia in rooms (condoms, lubricant, lotion);

   h.  Large amounts of used condoms, empty lube bottles, lingerie, sex toys, bodily

fluids on the sheets and towels, and other sex-related items in the hotel rooms;

i. Payments for the rooms in cash, or cash substitutes such as a prepaid credit card;

j. Victim(s) and/or Plaintiff's physical appearance (malnourished, bruised, beaten, drugged, and inappropriate attire);

k. A continuous procession of men (sex buyers and/or "Johns") entering and leaving Plaintiff's and/or victim(s)' room;

l. Excessive requests for sheets, cleaning supplies, towels, and room service;

m. Red flags identified in Count 1 below; and

n. Other red flags that Defendants knew and/or should have known of.

82. Defendants could have and should have adopted policies and procedures related to sex trafficking and made anti-sex trafficking resources readily available to their actual or apparent agents, servants, employees and/or staff, but, upon information and belief, they did not.

83. Defendants could have and should have mandated that all of their actual or apparent agents, servants, franchisees, employees and/or staff complete anti-sex trafficking training, but, upon information and belief, they did not properly do so.

84. Defendants could have and should have encouraged all of their actual or apparent agents, servants, staff, employees and/or staff to report suspected incidents of sex trafficking when observed at the subject hotel, but, upon information and belief, they did not.

85. Defendants could have and should have developed and maintained relationships with law enforcement regarding appropriate and timely responses to suspected incidents of sex trafficking at the subject hotel, but, upon information and belief, they did not.

86. Defendants could have and should have posted anti-sex trafficking awareness and informational materials in common areas and guest rooms at the subject hotel, to help eliminate

sex trafficking, but, upon information and belief, they did not properly do so.

87.     Defendants failed to take effective preventative measure at the subject hotel, in spite of the indicia of sex trafficking and effective preventative measures being widely known and available to them; they simply elected not to properly engage in preventative policies and practices.

88.     The motivation behind Defendants ongoing willful blindness and ongoing failure to act was, in whole or in part, for Defendants financial benefit.

89.     By repeatedly failing to heed the call or repeatedly failing to execute their own policies, Defendants facilitated the sexual trafficking crimes at the subject hotel and in particular the victimization of this Plaintiff.

90.     Due to Defendants' actions, failures to act, and/or omissions, Defendants facilitated and enabled sex trafficker(s) to use the subject hotel for sex trafficking of women and this particular Plaintiff.

91.     Defendants' failure to prevent and stop sex trafficking and sexual exploitation at the subject hotel, makes them accountable to victims of sex trafficking, including the Plaintiff.

**B. THE SEX TRAFFICKING OF PLAINTIFF AT THE SUBJECT HOTEL**

92.     During 2012 and up to and inclusive of 2015, Plaintiff was sex trafficked at the subject hotel by her trafficker(s).

93.     At all relevant and material times to this Complaint as it pertains to the alleged respective time periods of ownership, Defendants, individually and/or by and through their actual or apparent agents, servants, and/or employees, rented rooms at the subject hotel to Plaintiff's sex trafficker(s) and Defendants financially benefitted from same.

94.     At all times material to this Complaint as it pertains to the alleged respective time

periods of ownership, Defendants received monetary payment for the rental of rooms at the subject hotel, including the room(s) where Plaintiff was being trafficked.

95.    Plaintiff was forced to engage in sexual activities within and on the premises of the subject hotel, including within the rooms rented to and/or by Plaintiff's trafficker(s), that was at all relevant times owned, operated, managed, supervised, controlled by Defendants. Force means any form of violence compulsion or restraint exercised upon or against a person. Force can also be effected through power or pressure which need not necessitate physical components.

96.    As it pertains to these Defendants, Plaintiff performed numerous commercial sex acts per day while at the subject hotel.

97.    Upon information and belief, while at the subject hotel, Plaintiff was forced to engage in frequent use of drugs and/or alcohol and would exhibit behavior consistent with someone who was under the influence, or near overdose, of same.

98.    Defendants, individually and/or by their actual or apparent agents, servants, staff and/or employees, as it pertains to the alleged respective time periods of ownership, knew or had constructive knowledge, that they were renting or otherwise providing rooms and services to individuals, such as Plaintiff's sex trafficker(s), who were engaged in the commercial sex trade.

99.    Defendants, individually and/or by their actual or apparent agents, servants, and/or employees, as it pertains to the alleged respective time periods of ownership, knew or should have known of suspicious activity occurring at the subject hotel and that by failing to inspect and make their hotel premises safe from criminal activity, it was foreseeable that illegal activity was, and would continue to be, carried out on their hotel premises.

100.   It follows then that Defendants could reasonably foresee that sex crimes, human trafficking or other foreseeable acts were occurring on their premises and/or were being committed against hotel guests, such as Plaintiff.

101.   Moreover, Defendants' agents, servants, staff and employees observed Plaintiff and had knowledge, or should have had knowledge, that Plaintiff was staying at the hotel for an extended period of time to carry out sex trafficking.

102.   At all relevant and material times, as it pertains to the alleged respective time periods of ownership, Defendants, individually and/or by and through their actual or apparent agents, servants, staff and/or employees, was uniquely positioned to observe the manifestations or indications of sex trafficking within the subject hotel.

103.   Had the subject hotel staff been properly trained by Defendants and/or anyone acting on their behalf regarding the obvious and overt signs of sex trafficking, they would have observed the obvious and overt signs of sex trafficking at the subject hotel, including as they applied to Plaintiff, and these signs would have been recognized and, therefore, reported.

104.   Defendants exercised or had the right to exercise control over business operations, management, supervision, administration, and procedures of the subject hotel.

105.   Defendants failed to implement and enforce their own policy or policies and protect Plaintiff from being sex trafficked.

106.   Defendants knew or should have known that the subject hotel where Plaintiff was trafficked was an area known for incidences of crime and prone to sex trafficking activity on and around the subject hotel premises, including when Plaintiff was trafficked.

107.   Despite having evidence of sex trafficking that occurred at the subject hotel, Defendants failed to stop these actions.

108.   Defendants could have prevented sex trafficking, including but not limited to, by: (i) distributing information to assist their agents, employees, staff in identifying sex trafficking and indications of an illegal enterprise or suspicious activity; (ii) posting notices on what is sex trafficking and a national hotline; (iii) providing a process for reporting and escalating sex trafficking concerns within the organization, and to appropriate outside agencies; (iv) requiring all employees to attend training related to handling a situation involving sex trafficking; (v) providing new hire orientation on anti-sex trafficking measures, corporate responsibility and whistleblowing of enablers; (vi) providing training and education to their staff through webinars, seminars, conferences, and online portals on how to respond to suspected sex traffickers, victims, and suspicious activity; (vii) developing and holding ongoing training sessions on sex trafficking; or providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention; (viii) providing steps they can take to deter traffickers and decline forms of bribery; and (ix) ensuring strict security protocols, credit cards only, and no loitering.

109.   Defendants failed to take adequate steps to prevent sex trafficking at the subject hotel where Plaintiff was trafficked, including the years as a minor child.

110.   The acts and/or omissions of Defendants served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of Plaintiff, as both a minor child and as an adult, and others, for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking and in particular this Plaintiff.

## C. DEFENDANTS KNOWINGLY BENEFITTED FROM PLAINTIFF'S SEX TRAFFICKING

111.   At all relevant and material times, Defendants received money and financially

profited from the forced commercial sex acts being performed by Plaintiff that were being carried out on the premises of the subject hotel.

112.    Defendants knew or should have known that they were financially profiting from the continuation of illegal commercial sex acts committed on the premises of the subject hotel through both renting of rooms and provision of the Plaintiff's forced commercial sex services.

113.    Despite knowledge, constructive knowledge and/or general awareness of the signs of sex trafficking, Defendants, individually and/or by and through their actual or apparent agents, servants, staff, and/or employees, failed to report to authorities, intervene, disrupt, refuse or otherwise stop the sex trafficking of Plaintiff.

114.    By harboring Plaintiff's sex trafficker(s) and their sex trafficked victims at the subject hotel, Defendants, individually and/or by and through their actual or apparent agents, servants, staff, and/or employees, continued to financially profit from the room occupancy derived from not reporting and not refusing the sex trafficking of Plaintiff.

115.    Accordingly, Defendants continued to financially profit from the room occupancy derived from not protecting their hotel guests, to wit Plaintiff, from being a continuous victim of sex trafficking from the time she was a minor child through adulthood.

### D. DEFENDANTS' WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR HOTEL

116.    Plaintiff was a hotel guest at the subject hotel and Plaintiff was seriously and permanently injured as a direct result of the Defendants' acts and omissions, in that Defendants permitted, harbored and facilitated illegal sex trafficking to take place at the subject hotel whereby the Plaintiff was coerced and forced to engage in sex, beaten, manipulated with drugs, and enslaved.

117.    More specifically, at all material times, in the quest for profits, the acts and/or omissions

of Defendants caused Plaintiff to suffer physical, mental and emotional injuries and conscious pain and suffering.

118.    The injuries and/or harms that Plaintiff suffered as a result of Defendants' negligent operation of the subject hotel and Defendants' failure to make the hotel premises safe, are of a permanent and/or continuing nature.

119.    Defendants, as hotel operators, owners, franchisee, supervisors and controllers, had a continuing legal duty to protect their hotel guests and other invitees, like Plaintiff, to use ordinary care to keep their hotel premises in a reasonably safe condition, and to protect their guests, such as Plaintiff, from harm due to reasonably foreseeable risks of injury, regardless if the guests were utilizing the hotel's common rooms, facilities, exterior passageways, or were within the confines of the rented rooms.

120.    Defendants failed in their duties to Plaintiff to provide security and other precautions to prevent the criminal acts upon her by third parties on a regular basis.

121.    Defendants should have taken steps to prevent sex trafficking at the subject hotel in accordance with applicable Federal, State, and local laws and guidelines.

122.    Accordingly, because sex trafficking and other illegal activity associated therewith was foreseeable, Defendants had a duty to take adequate security or remedial measures to protect their guests from criminal activity.

123.    By failing to act, Defendants, by and through their actual or apparent agents, servants, franchisees and/or employees, allowed Plaintiff to be harbored and confined for sexual acts while collecting rental fees thereon.

124.    As a further direct and proximate result of Defendants' conduct and lack of due and reasonable care, Plaintiff has incurred expenses, fees, and costs of medical care and attention

to her injuries, including: (1) physicians' fees; (2) medications and medical supplies; (3) hospitalizations; and (4) transportation costs to and from various physicians' offices and hospitals.

125.    As a further direct and proximate result of Defendants' conduct and lack of due and reasonable care, Plaintiff has suffered great physical and mental pain, and will continue to suffer such pain for the indefinite future, for which Plaintiff should also be compensated by Defendants.

## CAUSES OF ACTION

### A.  COUNT I - VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

126.    Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above captioned Defendants.

127.    In support of her action against Defendants, Plaintiff adopts and incorporates by reference all paragraphs contained in this Complaint as if fully set forth herein.

128.    Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

129.    As it pertains to this Defendants, Plaintiff was sex trafficked at the subject hotel located at 2165 E Lincoln Hwy, Lancaster, PA 17602 during 2012 and inclusive of 2015.

130.    Plaintiff was sex trafficked at the subject hotel when she was a minor child and continued into adulthood.

131.    18 U.S.C. § 1591 of the TVPRA criminalizes sex trafficking in which the person induced to such commercial sex act has not attained 18 years of age.

132.    Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. *See* 18 U.S.C. § 1591. Separately, §1595 of the TVPRA provides individuals who are

victims of sex trafficking with a civil remedy against the traffickers and/or the beneficiaries of the sex trafficking crimes. *See* 18 U.S.C. §1595(a). More specifically, §1595 provides for three distinct causes of action: (1) a claim against the trafficker who directly violated §1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil Defendant who did not violate §1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

133.    In this matter, Plaintiff was a victim of sex trafficking on the premises of the subject hotel.

134.    Defendants rented room(s) to individual(s) they knew or should have known were engaged in sex trafficking of both minor children and adult women and Plaintiff, as both a minor child and an adult, in particular.

135.    Defendants rented rooms to Plaintiff's sex traffickers and rented to them again despite having constructive knowledge of their intent to traffic Plaintiff.

136.    A continuous business relationship existed between the subject hotel, its employees, agents, servants, and staff, and Plaintiff's trafficker(s) in that the hotel repeatedly rented rooms to individuals they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

137.    Plaintiff was induced by her traffickers by force, fraud or coercion, to have sex with staff at the subject hotel, i.e., with a manager and a custodian - both of whom Plaintiff perceived to be of descent from India or at least the appearance thereof.

138.    The subject hotel by its agents, servants, staff and employees actually knew of the

subject sex trafficking of the Plaintiff on the premises because Plaintiff was induced by her traffickers to have sex with staff at the subject hotel, i.e., with a manager and a custodian - both of whom Plaintiff perceived to be of descent from India or at least the appearance thereof.

139.    Defendants knowingly benefited financially or by receiving anything of value from participation in a venture which said Defendants knew or should have known has engaged in an act in violation of this chapter.

140.     As to Plaintiff's TVPRA action as against the above captioned Defendants, Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and is therefore entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity who knowingly benefits, financially or by receiving anything of value from participation in a venture which that entity or person knew or should have known has engaged in violations of the TVPRA.

141.    Defendants participated in a venture by operating the subject hotel that rented rooms to individuals that Defendants knew or should have known were involved in sex-trafficking pertaining to Plaintiff.

142.    Operating a hotel and renting out rooms is an enterprise involving risk or potential profit.

143.    Operating the subject hotel and renting out rooms to Plaintiff's trafficker was an enterprise involving risk or potential profit.

144.    Defendants, their agents, servants, staff and employees, were participating in an enterprise involving risk and knowingly benefiting from the risk.

145.    Defendants profited from the rooms rented by Plaintiff's trafficker(s) or at the direction of her trafficker(s).

146.     The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

147.     Defendants, their agents, servants, staff and employees, had actual and/or constructive knowledge that the venture violated the TVPRA as to the Plaintiff herein.

148.     Defendants knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented for Plaintiff and her trafficker(s) at the subject hotel. In addition, Defendants received other financial benefits including but not limited to food and beverage sales and ATM fees from those persons who were engaging in sex trafficking.

149.     Defendants knew or should have known about the nature of the sex trafficking occurring at the subject hotel, and in particular as to the Plaintiff herein, due to the many red flags then and there existing, including but not limited to:

    a.   Constant foot traffic of "Johns" to the trafficker's room to have sex with trafficked women.

    b.   Parade of unregistered and suspicious individuals in and out of the subject room(s) where trafficking was occurring.

    c.   Suspicious people coming in and out of the rented room(s).

    d.   Trafficked victim(s) would walk around hotel grounds drug and/or alcohol impaired, sleep impaired, hygiene impaired, behavior impaired, with bruises, and malnourished and in sexually explicit clothing.

    e.   The trafficked drug impaired women on the hotel premises.

    f.   The trafficked alcohol impaired women on the hotel premises.

    g.   The trafficked behavior impaired women on the hotel premises.

    h.   The trafficked speech impaired women on the hotel premises.

i.   The trafficked hygiene impaired women on the hotel premises.

j.   The trafficked women with visible bruises (from being hit by traffickers) on the hotel premises.

k.   The trafficker(s), trafficker's entourage, and trafficked women and children standing outside the room when a "John" came to the room. (When the room was not occupied by a paying "John" the room was full of suspicious people including the trafficker(s), the traffickers' entourage, and the trafficked women and children. When a "John" would come to the room, everyone but the "John" and the trafficked women and children would leave the room, so there would be a number of people including drug impaired, behavior impaired, hygiene impaired, speech impaired, sleep deprived, malnourished, with bruises loitering outside the room.

l.   Inside the hotel room there was a suspicious bunch of people and suspicious items including weapons, cash, phones, drugs, drug paraphernalia, condoms, lubricants, lingerie, and syringes.

m.   Smoking cigarettes and drugs in room made noticeable odor which would permeate outside room.

n.   The activity of these suspicious looking people was not limited to inside the rented room and directly outside the room but also throughout the accessible common areas and public areas of the subject hotel.

o.   Trafficker(s) speaking to women or children in aggressive/abusive manner – which should have raised alarms.

p.   Staying at hotel with no luggage/suitcases or few personal belongings

q.   Plaintiff's trafficker(s) was a pimp and his general conduct on hotel grounds was

not discreet. As Plaintiff's trafficker(s) was frequently on drugs and exhibited violent and aggressive behavior.

r.   Trafficker(s) monitoring hotel hallway or door of room or walking hotel perimeter.

s.   Underage victim(s) being trafficked on premises in an overt manner.

t.   Other commonly known sex trafficking red flags which the above captioned Defendants would have been aware of had anti-trafficking measures been timely and properly implemented at the hotel.

u.   Staff/Employees of defendants having sex with Plaintiff, in particular a manager and custodian.

150.   Plaintiff T.F. interacted with Defendants' staff while exhibiting the above signs and characteristics of trafficking set forth in the above paragraph.

151.   Defendants' staff witnessed and observed on a regular and frequent basis the above signs and characteristics of sex trafficking as set forth in the paragraph 149.

152.   Plaintiff's trafficker(s) developed relationships with some of the subject hotel's staff and employees and had illicit arrangements with them to conceal the ongoing sex trafficking occurring on the hotel premises including as to the Plaintiff.

153.   Upon information and belief, Plaintiff's trafficker(s) had hotel employee(s) acting as lookouts for Plaintiff's trafficker(s) and informing the traffickers of police activity.

154.   Defendants, as it pertains to the alleged respective time periods of ownership, participated in a venture under 18 U.S.C. § 1595(a) by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of Plaintiff for commercial sexual exploitation by repeatedly renting room(s) at subject hotel to people Defendants knew or should have known were engaged in sex trafficking.

155.    Defendants actively participated in this illegal endeavor by knowingly or negligently providing lodging in which to harbor Plaintiff while she was being trafficked.

156.    Plaintiff was forced to perform commercial sex acts in the room(s) at the subject hotel. Accordingly, the traffic and parade of men coming in and out of her room was tremendous. This procession of unregistered male guests would have been open and obvious to anyone working at the subject hotel.

157.    Moreover, this traffic of men and unregistered guests coming in and out of the room of and/or with a minor child would cause alarm to any observing individual.

158.    Plaintiff was sold via commercial sex transactions at the Defendants' subject hotel property, where force, fraud, and/or coercion were used against her, while Defendants turned a blind eye and continued to benefit.

159.    Defendants profited from the sex trafficking of Plaintiff and knowingly or negligently aided, enabled, and facilitated the sex trafficking of Plaintiff. Defendants rented rooms to Plaintiff's trafficker(s) when they knew, or should have known, that her trafficker(s) were using their room to subject Plaintiff to repeated sexual exploitation and sexual servitude.

160.    Defendants' respective failure, by their agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including but not limited to being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple "Johns" per day while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries suffered by her including her causally related PTSD.

161.    Upon information and belief, Plaintiff was advertised for sex on websites known for trafficking, whereby Defendants provided open access to these known websites permitting traffickers and buyers to enable, facilitate, and otherwise assist in the harboring of Plaintiff for the purpose of sex trafficking.

162.    Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries and significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning

163.    As a direct and proximate result of Defendants' multiple failures to act, mandate, establish, execute anti-trafficking measures and/or modify their anti-trafficking efforts at their hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendants' hotel during their respective periods of ownership as set forth above.

164.    As a consequence of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## B.  COUNT 2 – NEGLIGENCE, GROSS NEGLIGENCE, AND/OR RECKLESSNESS

165.    Plaintiff sets forth an action for Negligence, Gross Negligence, and/or Recklessness against the above captioned Defendants.

166.    In support of her action against Defendants, Plaintiff adopts and incorporates by reference all paragraphs contained in this Complaint as if fully set forth herein.

167.    At all times relevant, Defendants owed a duty to protect Plaintiff as set forth at length below and herein.

168.    Defendants violated their duty to Plaintiff and were negligent, careless, and/or reckless as set forth at length below and herein.

169.    Due to the negligence of these Defendants, Plaintiff was caused to be sexually exploited, sexually abused, and sex trafficked on the subject hotel's premises both as minor child and as an adult during the years 2012 up to and inclusive of 2015.

170.    At all times material to this complaint, Plaintiff, while an invitee or otherwise present upon the premises of the subject hotel, did sustain injuries as a result of these Defendants and the criminal activity carried on at the subject hotel enabled by the negligence of Defendants.

171.    Defendants, individually and/or by and through their agents, servants, and/or employees, were under a duty to provide reasonable, adequate, and sufficient security personnel and/or to otherwise take appropriate steps to ensure the safety and protection of persons, (both minors and adults), lawfully on the premises of the subject hotel and Plaintiff in particular.

172.    Defendants, individually and/or by and through their agents, servants, and/or employees, should have reasonably anticipated criminal conduct, and, in particular, sex trafficking and sexual exploitation of minors and adults and Plaintiff herein, by third parties, including other guests, invitees or persons at the subject hotel.

173.    Defendants, individually and/or by and through their agents, servants, and/or employees, had a duty to take precautions against reasonably anticipated criminal conduct and, in particular, sex trafficking and sexual exploitation of minors and adults and the Plaintiff herein, by third parties and to operate the subject hotel in a manner that did not endanger children or adults, including Plaintiff who suffered both as a minor and adult at this particular hotel. Moreover,

Defendants had a duty of care to take reasonable steps to protect foreseeable victims of the dangers created by their acts and omissions, including the danger of sex trafficking and sexual exploitation on the premises at the subject hotel and in particular to Plaintiff herein.

174.   Defendants, individually and/or by and through their agents, servants, and/or employees, breached the foregoing duties because they knew, or should have known, that persons lawfully on the premises and the subject hotel, such as Plaintiff, could have been victimized by, or subjected to, criminal activities, including, but not limited to, sex trafficking, sex abuse, and sexual exploitation, on the premises that would likely endanger her/their health, safety, and/or well-being. Moreover. Defendants breached their duty of care because they knew, or should have known, that adults working as sex traffickers were causing, by any means, persons, including Plaintiff and others, to be sexually exploited and trafficked at the subject hotel.

175.   Defendants, individually and/or by and through their agents, servants, and/or employees, should have reasonably anticipated that it was reasonably foreseeable from their  knowledge and/or past experiences and from information well known within the hotel industry in general, that persons on the premises of the subject hotel, such as but not limited to Plaintiff, would be sex trafficked and sexually exploited and thereby suffer serious bodily and mental harm as a result of being sexually victimized by violent crimes perpetrated by third parties on the premises of the subject hotel.

176.   Defendants, violated their respective duty(ies) and were negligent, careless, and/or reckless individually and/or by and through their agents, servants, and/or employees including but not limited to the following ways:

> a.   Failing to execute and/or implement the established security plan and/or execute and/or implement any established security plan;

b.  Failing to publish and/or post orders at the security posts providing protocols for employees to follow in circumstances involving commercial sexual activity and/or human sex trafficking;

c.  Failing to adopt, establish, implement, and/or enforce required policies, procedures, rules, regulations and/or guidelines concerning protection of individuals lawfully on the premises;

d.  Failing to adopt, establish, implement, and/or enforce required policies, procedures, rules, regulations and/or guidelines concerning removal from the premises of individuals posing security threats;

e.  Failing to adequately control access to the premises;

f.  Failing to prevent entry of unauthorized individuals onto the premises;

g.  Failing to properly and adequately hire, train and provide ongoing training to employees including but not limited to ongoing training involving recognizing, preventing and responding to criminal activity, prostitution and sex trafficking;

h.  Failing to select and/or retain only personnel competent to provide proper and adequate professional services;

i.  Failing to assign experienced security personnel to provide competent guard services at the subject hotel;

j.  Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations and/or guidelines concerning protection of business invitees on the premises of the subject hotel;

k.  Failing to adopt, establish, implement, execute and/or enforce required policies,

procedures, rules, regulations, and/or guidelines concerning proper security measures in a hotel setting;

l.   Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations, and/or guidelines concerning proper monitoring, surveillance, and patrolling of the premises;

m.   Failing to detect and respond to commercial sex activity and human sex trafficking at the subject hotel;

n.   Failing to conduct adequate surveillance of the premises of the subject hotel;

o.   Failing to utilize surveillance equipment to monitor suspicious activity and promptly react thereto for the safety of Plaintiff;

p.   Failing to respond and react to suspicious activity detected on video surveillance;

q.   Failing to maintain surveillance equipment in proper working order;

r.   Failing to test or properly test surveillance equipment to ensure it was in working order;

s.   Failing to utilize appropriate and/or required surveillance equipment;

t.   Failing to adequately monitor activity on video surveillance and promptly react thereto for the safety of Plaintiff;

u.   Allowing individuals to come on to the premises for the express purpose of trafficking Plaintiff;

v.   Failing to prevent Plaintiff from being trafficked on the premises;

w.   Failure to monitor and make necessary changes to WIFI to prevent same from being used to conduct criminal activities on premises;

x.   Breaching their duties under the Restatement of the Law of Torts [Second], including but not limited to §§ 302, 318, 321, 323, 324A, and 344; and

y.   Failing to exercise care, caution, and diligence required under the circumstances.

177.   By renting rooms to Plaintiff's sex traffickers, Defendants, individually and/or by and through their actual or apparent agents, servants and employees, breached the standard of good and prudent care by not reporting, intervening, disrupting or otherwise stopping the practice of traffickers committing commercial sex acts.

178.   Defendants were negligent, careless, and/or reckless by failing to establish and/or implement anti-trafficking policy and protocol at the subject hotel.

179.   Defendants were negligent, careless, and/or reckless by failing to establish and/or implement End Child Prostitution and Trafficking (ECPAT) policy and protocol at the subject hotel.

180.   Defendants knew or should have known about the nature of the sex trafficking, sexual exploitation and sex abuse occurring at the subject hotel, including as they related to Plaintiff, as both a minor and later as an adult, due to the many red flags then and there existing, including but not limited to:

a.   Constant foot traffic of "Johns" to the trafficker's room to have sex with trafficked women and children.

b.   Parade of unregistered and suspicious individuals in and out of the subject room(s) where trafficking was occurring.

c.   Suspicious people coming in and out of the rented room(s).

d.   Trafficked victim(s), including minor children, would walk around hotel grounds drug and/or alcohol impaired, sleep impaired, hygiene impaired, behavior impaired,

with bruises, and malnourished and in sexually explicit clothing.

e.   The trafficked drug impaired women and/or children on the hotel premises.

f.   The trafficked alcohol impaired women and/or children on the hotel premises.

g.   The trafficked behavior impaired women and/or children on the hotel premises.

h.   The trafficked speech impaired women and/or children on the hotel premises.

i.   The trafficked hygiene impaired women and/or children on the hotel premises.

j.   The trafficked women and/or children with visible bruises (from being hit by traffickers) on the hotel premises.

k.   The trafficker(s), trafficker's entourage, and trafficked women and/or children standing outside the room when a "John" came to the room. (When the room was not occupied by a paying "John" the room was full of suspicious people including the trafficker(s), the traffickers' entourage, and the trafficked women and/or children. When a "John" would come to the room, everyone but the "John" and the trafficked woman and/or children would leave the room, so there would be a number of adults and children including those who were obviously drug impaired, behavior impaired, hygiene impaired, speech impaired, sleep deprived, malnourished, and with visible bruises and injuries loitering outside the room.

l.   Inside the hotel room there was a suspicious bunch of people and suspicious items including weapons, cash, phones, drugs, drug paraphernalia, condoms, lubricants, lingerie, and syringes.

m.   Smoking cigarettes and drugs in room made noticeable odor which would permeate outside room.

n.   The activity of these suspicious looking people was not limited to inside the rented

room and directly outside the room but also throughout the accessible common areas and public areas of the subject hotel.

o.   Trafficker(s) speaking to women and/or children in aggressive/abusive manner – which should have raised alarms.

p.   Staying at hotel with no luggage/suitcases or few personal belongings

q.   Plaintiff's trafficker(s) was a pimp and his general conduct on hotel grounds was not discreet. As Plaintiff's trafficker(s) was frequently on drugs and exhibited violent and aggressive behavior.

r.   Trafficker(s) monitoring hotel hallway or door of room or walking hotel perimeter.

s.   Other commonly known sex trafficking red flags which the above captioned Defendants would have been aware of had anti-trafficking and EPCAT measures been timely and properly implemented at the hotel.

t.   Staff/Employees of Defendants having sex with Plaintiff, in particular a manager and custodian.

181.   Defendants, by their respective agents, servants, staff and employee interacted with Plaintiff, her trafficker and/or the trafficker's entourage, (individually and/or collectively), contemporaneous with the above listed indicators of sex trafficking occurring and contemporaneously witnessed and observed such indicators but failed to timely and properly address same.

182.   As a result of Defendants' negligence, Plaintiff was caused to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future.

183.   As a result of the Defendants' negligence, Defendants breached their duty to Plaintiff in

not reporting, intervening, disrupting or otherwise stopping sex trafficking occurring at the subject hotel.

184.   As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendants, Plaintiff was repeatedly and consistently sexually exploited, sexually abused and sex trafficked as a minor child at the subject hotel and was otherwise irreparably injured, both physically and psychologically due to same.

185.   As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendants, Plaintiff was repeatedly and consistently sexually exploited, sexually abused and sex trafficked as an adult at the subject hotel and was otherwise irreparably injured, both physically and psychologically due to same.

186.   Defendants acted outrageously and in reckless disregard for the health and welfare of Plaintiff warranting the imposition of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants for more than $75,000, as identified in each of the above-referenced claim(s) and Count(s) and as follows:

a)  All available compensatory damages for the described losses with respect to each cause of action;

b)  Past and future medical expenses, as well as the costs associated with past and future life care;

c)  Past and future lost wages and loss of earning capacity;

d)  Past and future emotional distress;

e)  Consequential and/or special damages;

f)  All available noneconomic damages, including without limitation pain,

suffering, and loss of enjoyment of life;

   g)  Disgorgement of profits obtained through unjust enrichment;

   h)  Restitution;

   i)  Reasonable and recoverable attorney's fees;

   j)  Punitive damages with respect to each cause of action;

   k)  Costs of this action; and

   l)  Pre-judgement and all other interest recoverable.

## <u>THE PLAINTIFF DEMANDS A TRIAL BY JURY</u>

Dated: September 12, 2023

**RESPECTFULLY SUBMITTED,**

<u>s/ *Renee E. Franchi, Esq.*</u>
Renee E. Franchi, Esq.
Andreozzi + Foote, P.C.
4503 N Front St,
Harrisburg, PA 17110
866-311-8640
*renee@vca.law*
866-311-8640


<u>s/ *Randolph Janis, Esq.*</u>
Randolph Janis, Esq. application to be made for *Pro Hac Vice*
Douglas and London, P.C.
Attorneys for Plaintiff
59 Maiden Lane, 6th Floor New York, NY 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501
*rjanis@douglasandlondon.com*